# In the United States Court of Federal Claims

No. 17-427C
(Filed: June 16, 2017)[1]
(Re-filed: June 28, 2017)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

SUPPLYCORE INC.,

   *Plaintiff*,

v.

THE UNITED STATES,

   *Defendant*,

and

S&K AEROSPACE, LLC,

   *Intervenor*.

Post-award bid protest; Past performance; Unstated evaluation criteria; Inadequate discussions; Best value tradeoff.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

 *William E. Hughes*, Milwaukee, WI, with whom was *Emily A. Constantine*, for plaintiff.

 *Daniel B. Volk*, United States Department of Justice, Civil Division, Washington, DC, with whom were *Chad A. Readler*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Douglas K. Mickle*, Assistant Director, for defendant. *Michael G. McCormack*, Air Force Legal Operations Agency, of counsel.

---

[1] This opinion was originally issued under seal to afford the parties an opportunity to propose redaction of protected information. The parties have not proposed any redactions. The opinion thus appears as in the original.

*Michelle E. Litteken*, Washington, DC, with whom were *Pamela J. Mazza*, *Megan C. Connor*, *Jacqueline K. Unger*, for intervenor.

## OPINION

This is a post-award bid protest by SupplyCore Inc. challenging the Air Force's award of a services contract for supply logistics, maintenance, and other analytical or technical services in support of the Air Force's Parts and Repair Ordering System ("PROS"). The awardee, S&K Aerospace, LLC ("S&K"), intervened. The parties have filed cross-motions for judgment on the administrative record, which are fully briefed. Oral argument was held on June 7, 2017. As announced at the conclusion of oral argument, because the Air Force was not arbitrary or capricious in its award decision, the protest is denied.

## BACKGROUND

### I. The Solicitation

The Air Force Security Assistance and Cooperation Directorate ("agency") issued Request for Proposals No. FA8630-14.5-5030 (the "solicitation" or "RFP") on April 20, 2015, for the Air Force's next iteration of the PROS support contract, known as "PROS V." The PROS V contractor will provide critical support services for the Air Force's system for foreign military buyers to acquire "non-standard and hard-to-support parts and related repairs" for previously purchased military equipment. Administrative Record ("AR") at 2. The contract has a government estimated value of $4.2 billion.

The solicitation was for an indefinite-delivery/indefinite-quantity of services with a five-year base period, five option years, and a five-year closeout period. The solicitation promised a best value determination based on three factors: Technical Capability, Past Performance, and Price. Technical Capability was rated on an acceptable/unacceptable basis while Past Performance was rated adjectively and the total price was evaluated for reasonableness and "balanced pricing." AR at 322-23. Past performance and price were weighted equally; thus, as among technically acceptable offerors, the Air Force performed a trade off analysis between those two factors to evaluate which bidder offered the best value to the government. The evaluation and award process was a negotiated procurement under Federal Acquisition Regulation ("FAR") part 15.

2

The Technical Capability factor was subdivided into three subfactors: Process Performance, Performance Management, and Small Business participation. An offeror needed to be rated "acceptable" for each technical subfactor in order to be considered for award. AR at 319. The solicitation provided offerors with various "Measures of Merit" for each subfactor that related to elements of the RFP's Performance Work Statement ("PWS"). Offerors were required to show they would meet these measures in order to be rated as acceptable. *See* AR at 319-20 (Process Performance); 320-22 (Program Management); 322 (Small Business Participation). There were 21 Measures of Merit in total across all three subfactors.

Past performance was evaluated for the Air Force's level of confidence in an offeror's "ability to meet requirements based on a demonstrated record of performance." AR at 323. Offerors were instructed to submit a maximum of three past contracts for themselves and up to three past contracts per subcontractor that would be performing at least 10 percent of the work. The following overall adjectival ratings were the possible results:

| Rating | Description |
| --- | --- |
| Substantial Confidence | Based on the Offeror's recent/relevant performance record, the Government has a high expectation that the Offeror will successfully perform the required effort. |
| Satisfactory Confidence | Based on the Offeror's recent/relevant performance record, the Government has an expectation that the Offeror will successfully perform the required effort. |
| Limited Confidence | Based on the Offeror's recent/relevant performance record, the Government has a low expectation that the Offeror will successfully perform the required effort. |
| No Confidence | Based on the Offeror's recent/relevant performance record, the Government has no expectation that the Offeror will successfully perform the required effort. |
| Unknown Confidence (Neutral) | No recent/relevant performance record is available or the Offeror's performance record is so sparse that no meaningful confidence assessment rating can be reasonably assigned. |

3

AR at 323.  As part of the evaluation, the Air Force considered both the recency, relevance, and quality of performance for each of the submitted past performance references (contracts).  Submitted contracts or subcontracts had to have been performed within the past five years to be considered recent.

Each contract meeting the recency requirement was then evaluated for its relevance to the contract being solicited.  Past performance contracts were considered either very relevant, relevant, somewhat relevant, or not relevant, depending on the agency's view of how similar the cited contracts were in "scope and magnitude of effort and complexities" as compared to the contract at issue.  AR at 324.  As part of that determination, the solicitation informed offerors that the Air Force would "conduct an in-depth evaluation of recent performance information obtained to determine how closely the products provided/services performed under those contracts relate to the Technical Subfactors (Section M Paragraphs 2.1.1-2.1.3)."  *Id.*  The Air Force thus assigned three relevance ratings per past performance contract–one for each technical subfactor.

The Performance Quality Assessment focused on "performance relevant to the technical subfactors" and the solicitation warned that "all aspects of performance that related to this acquisition may be considered."  AR at 325.  Recent and relevant contracts were given adjectival descriptions for performance quality as well:

| Quality Assessment Rating | Description |
|---|---|
| Exceptional (E) | During the contract period, contractor performance is meeting (or met) all contract requirements and consistently exceeding (or exceeded) many. Very few, if any, minor problems encountered. Contractor took immediate and effective corrective action. |

| Very Good (VG) | During the contract period, contractor is meeting (or met) all contract requirements and consistently exceeding (or exceeded) some. Some minor problems encountered. Contractor took timely corrective action. |
|---|---|
| Satisfactory (S) | During the contract period, contractor performance is meeting (or met) all contract requirements. For any problems encountered, contractor rook effective corrective action. |
| Marginal (M) | During the contract period, contractor performance is not meeting (or did not meet) some contract requirements. For problems encountered, corrective action appeared only marginally effective, not effective, or not fully implemented. Customer involvement was required. |
| Unsatisfactory (U) | During the contract period, contractor performance is failing (or fail[ed]) to meet most contract requirements. Serious problems encountered. Corrective actions were either ineffective or non-existent. Extensive Customer oversight and involvement was required. |
| Not Applicable (N) | Unable to provide a rating. Contract did not include performance for this aspect. Do not know. |

AR at 326. As with the relevance determination, each past performance reference was rated three times for performance quality–one for each technical subfactor. The relevance and performance quality ratings then were combined by the Air Force to come up with an overall confidence assessment rating, as mentioned above.

II. The Evaluation And Award

Four offerors submitted proposals. None were initially rated as eligible for award, but all were included in the competitive range. The Air Force then opened discussions with each offeror. After three rounds of discussions and

proposal revisions, three of the offerors–including plaintiff and intervenor–were rated as technically acceptable and considered for award.

Plaintiff was rated as technically acceptable with a total evaluated price of $4,007,180,003 and a Past Performance rating of satisfactory confidence. Intervenor was rated as technically acceptable with a total evaluated price of $4,010,130,466 and a Past Performance rating of substantial confidence. A third offeror was technically acceptable with a $4,010,605,422 total price and a satisfactory confidence rating for Past Performance. All three offerors' prices were found to be reasonable and balanced.

The Source Selection Evaluation Board ("SSEB") generated a comprehensive narrative summary, the Proposal Analysis Report ("PAR"), AR at 1164-214, which contained a summary of the procurement, the evaluation criteria, the proposals, and the SSEB's evaluation of them. That information was then put in slide format and presented by the SSEB Chair and the Contracting Officer ("CO") to the Source Selection Authority ("SSA"), AR at 1216-1292. A cost comparison was also prepared, which broke out the fixed costs from the contractor-supplied costs. AR at 1293. The Source Selection Advisory Council also prepared a shorter summary of the SSEB's evaluation and presented it to the SSA. The results, as recorded in these documents, were as follows.[2]

A. SupplyCore

Plaintiff submitted three past performance contracts for itself and three for its one large subcontractor. All six were rated as relevant or better. For the first technical subfactor, Process Performance, SupplyCore was found to have two very relevant references, both of which were rated as satisfactory for performance quality. The four other contracts were rated as relevant and the performance quality ratings ranged from "very good" to "not applicable." SupplyCore had no adverse ratings for this subfactor.

---

[2] All three final offerors were found technically acceptable overall and for all three technical subfactors (Process Performance, Program Management, and Small Business Participation). Because that factor was effectively a pass/fail test, we will limit further discussion to the discriminating factors of Past Performance and Price.

For the second technical subfactor, Program Management, plaintiff was rated as having one very relevant contract with a satisfactory performance rating and four relevant contracts with satisfactory performance quality ratings. The sixth contract was rated as relevant but was not rated for performance quality. No marginal or unsatisfactory performance was reported.

For the Small Business Participation subfactor, plaintiff did not have any past performance contracts that met the requirements of the PROS V contract.

The SSEB's past performance evaluators assigned an overall performance confidence rating of satisfactory to plaintiff for the Past Performance factor. This was explained in the PAR as a result of the SSEB's finding that SupplyCore had met all of the relevant requirements in each of its six past performance references but had exceeded requirements in only one contract for one technical subfactor. The one requirement that the SSEB found SupplyCore to have exceeded was with respect to packing and shipping of items internationally. Not having had any references relevant to the small business subfactor, this subfactor neither negatively nor positively affected Supplycore's overall Past Performance rating.

Plaintiff's final evaluated price was $4,007,180,003 which represented only $35,000,003 of contractor controlled costs and a fixed cost of $3,972,180,000. SupplyCore was the lowest offeror.

B. S&K

Intervenor submitted six relevant contracts for past performance assessment, three for itself, including the incumbent PROS IV contract, and three for two subcontractors. The past performance evaluators also found one additional relevant previous contract effort and rated it as well. For the Process Performance subfactor, five submitted contracts were found by the agency to be very relevant. Two of those contracts had performance quality ratings of very good and the other three were rated as satisfactory. The past performance evaluators found that intervenor or its subcontractors had exceeded performance requirements in four areas: 1) "Soliciting bids, proposals, and quotes from vendors[,] 2) Dealing with international customers, 3) Handling of classified and/ or hazmat items, and 4) Shipment and packing of items for international shipment." AR 1202. The SSEB found no adverse ratings for this subfactor.

The evaluation of the second technical subfactor, Program Management, resulted in a finding that two contracts were very relevant with satisfactory performance quality ratings. The other five contracts ranged from relevant with exceptional performance to not relevant and not performance rated. Two requirements were found to have been exceeded: 1) Contract start-up and 2) Quality assurance. No adverse ratings were reported.

For Small Business Participation, one contract was found to be relevant with very good performance quality. S&K "exceeded the requirements for small business." AR 1202.

The overall Past Performance confidence rating assigned by the SSEB was one of Substantial Confidence due to S&K having exceeded seven total requirements across all three subfactors. All other requirements were met across all of the relevant past performance references. The SSEB thus found that S&K's past performance proposal gave the Air Force a "high expectation that the offeror will successfully perform the required effort." AR at 1209.

Intervenor's final total evaluated price was $4,010,103,446. Of which, $37,923,446 was controlled by the contractor and $3,972,180,000 was fixed by the government. Intervenor was thus the second lowest price. Comparing only contractor-controlled costs, it was roughly three million dollars or 8.35 percent higher than SupplyCore. *See* AR at 1293.

C. The Award

The Source Selection Decision Document records that the SSA consulted the SSAC, SSEB, agency counsel, and the Acquisition Center of Excellence before making his final decision. AR at 1306. He also noted that he chaired several SSAC and SSEB meetings earlier during the evaluation process.

Because the highest rated offer for past performance was not also the lowest priced, the SSA performed a trade off analysis to determine whether the price premium of S&K's proposal was worth the increased confidence in successful performance (substantial versus satisfactory). His final conclusion was that the $3 million dollar premium was worth paying over the life of a 15 year contract for an increased assurance of successful performance. He noted that the price difference was only 0.073% when compared using the total contract price (contractor-controlled plus government-supplied prices).

The Source Selection Decision Document recited the contract requirements that the offerors had exceeded in their past performance efforts. The difference between S&K's seven exceeded requirements and SupplyCore's one exceeded requirement was noted. He agreed with the SSEB's adjectival ratings and did not disturb any of them. The document also reflects that the SSAC recommended award to S&K. The decision to award to intervenor was dated October 13, 2016.

On November 2, 2016, plaintiff was informed that S&K was awarded the contract. Plaintiff timely requested a debriefing, and the Air Force gave one on November 8, 2016, wherein SupplyCore was presented with all of its ratings. Plaintiff was also presented with S&K's total price and adjectival ratings for the factors and subfactors. Consistent with the SSA's determination, SupplyCore was informed that the agency had deemed the higher Past Performance confidence rating to be worth the small, 0.073%, price difference. *See* AR at 1361-64.

III. Procedural History

On November 14, 2016, plaintiff filed a protest at the Government Accountability Office ("GAO"). SupplyCore alleged that its past performance had been evaluated unreasonably, that the agency had failed to give proper weight to plaintiff's low price, and that the best value tradeoff was thus irrational. SupplyCore supplemented its protest a month later to add an allegation that the Air Force had applied undisclosed evaluation criteria and an allegation that S&K's past performance was rated too high.

GAO denied the protest on February 2, 2017, finding that the allegation of unstated evaluation criteria was without merit because the agency's reference to technical subfactors as part of the past performance evaluation in the solicitation was sufficient to put offerors on notice of the agency's interest in the Measures of Merit as they related to offeror's past performance contracts. AR at 2261-62; *SupplyCore, Inc.*, B-411648.2 et al., 2017 CPD ¶ 72 (Comp. Gen. Feb. 21, 2017). As to plaintiff's disagreements with its and S&K's specific past performance ratings, GAO found the agency's evaluations to have been reasonable and explained. As to the argument that price was not properly considered, GAO found the trade off between price and past performance to have been well within the zone of discretion afforded to agency officials.

Plaintiff filed the present suit on March 24, 2017, and S&K intervened

on March 30, 2017.  Plaintiff also filed a motion for a preliminary injunction to preserve the status quo.  Based on the agreement of the parties, that motion was denied as moot on March 31, 2017.  Defendant filed the Administrative Record on April 7, 2017.  The parties have since filed cross-motions for judgment on the administrative record, and the case is thus ready for disposition.  Plaintiff presents much the same arguments in its complaint and motion as it did at GAO.  We will consider them each in turn.

## DISCUSSION

We have jurisdiction over challenges brought by interested parties to actions taken by federal agencies in connection with a procurement or proposed procurement, both pre and post award.  *See* 28 U.S.C. § 1491(b)(1) (2012).  The issue of standing, whether plaintiff is an interested party, is not at issue.  It clearly has a direct economic interest in the matter and would have a "substantial chance of award" but for the alleged mistakes in the procurement process.  *See Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003).

In order to successfully challenge the agency's award decision, the protester must establish that the agency's decision was arbitrary, capricious, an abuse of discretion, or otherwise not accordance with the law.  This standard is borrowed from the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A) (2012).  *See* 28 U.S.C. § 1491(b)(4) (adopting the APA's arbitrary and capricious standard of review).  This is a deferential standard, which means that the agency need only have a rational basis for its decisions and not have otherwise violated any applicable law or regulation during the procurement process.  *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1358 (Fed. Cir. 2009).  As we frequently explain, absent some clear irrationality or legal violation, the court will not set aside the agency's determinations because doing so would be a substitution of our judgment for that of the agency decision makers.  *Redland Genstar, Inc. v. United States*, 39 Fed. Cl. 220 (1997).

I.  Unstated Evaluation Criteria

Plaintiff relies primarily on its first argument, which is that the Air Force's application of the Measures of Merit to its past performance evaluation was not disclosed to offerors ahead of time.  Had it been, plaintiff avers that it could have tailored its proposal to show how its past performance efforts met

those metrics.

Defendant and intervenor counter that the agency put plaintiff on notice of its interest in the relationship between the technical Measures of Merit and offerors' past performance several times in the solicitation. They cite to subsections 2.3.2.2 and 2.3.2.3 of Section M of the solicitation, Evaluation Factors for Award, wherein the agency notified offerors that it would be comparing their past performance efforts with the technical subfactors. Given that the solicitation's promise to use the Measure of Merit to assess whether offerors met the technical subfactor requirements, defendant and intervenor argue that the reference to the technical subfactors in the Past Performance evaluation section of the RFP was a sufficient disclosure of the relevance of the Measures of Merit to Past Performance.

We agree. Section 2.3.2.2 states that, in evaluating the relevancy of past performance contracts, the agency would "conduct an in-depth evaluation of [past performance information] to determine how closely . . . the services performed under those contracts related to the Technical Subfactors (Section M Paragraphs 2.1.1-2.1.3)." AR at 324. Sections 2.1.1, 2.1.2, and 2.1.3 are the evaluation criteria for each technical subfactor. Each section contains the Measures of Merit relevant to that subfactor. The specific citation to those sections draws a direct link between the Measures of Merit and the Past Performance relevancy evaluation.

Similarly, section 2.3.2.3, Performance Quality Assessment, states that this evaluation "will focus on performance relevant to the technical subfactors." AR at 325. As we stated above, the solicitation discloses in each technical subfactors' section the Measures of Merit related to that subfactor. When these two successive references are read together, other than specifically invoking the Measures of Merit by name, the Past Performance evaluation section of the solicitation could hardly be clearer. The relevance of the technical subfactors' Measures of Merit to the agency's evaluation of past performance was disclosed in the evaluation.[3] Plaintiff has not argued how or

---

[3] Intervenor in fact organized the narrative portions of its Past Performance volume by each technical subfactor and included descriptions of its performance relative to the Measures of Merit for each subfactor. *E.g.* AR at 1514-1524 (portions of S&K's narrative description of its performance of the

(continued...)

why this was otherwise irrational.

## II. Inadequate Discussions

Plaintiff next argues that the Air Force ought to have disclosed to plaintiff during discussions that the agency was applying the Measures of Merit to the past performance evaluation. Plaintiff cites FAR part 15.306(d), which requires that agencies tailor discussions to "each offeror's proposal" and must "indicate to, or discuss with, each offeror still being considered for award, deficiencies, significant weaknesses, and adverse past performance information to which the offeror has not yet had an opportunity to respond." 48 C.F.R. § 15.306(d) (2016). The argument is that disclosure of plaintiff's failure to address the Measures of Merit would have given it a chance to improve its proposal. Not having done so was misleading to plaintiff, it argues.

The agency had no need to disclose its use of the Measures of Merit during discussions because, as held above, it had done so already explicitly in the solicitation. Further, plaintiff's failure to specifically address them in its Past Performance volume was not held against it as a weakness or deficiency. Its contract references were found to be relevant or better and its performance quality ratings were satisfactory. In fact, though it did not address them each specifically in its Past Performance submission, the agency still found SupplyCore to have exceeded requirements for one Measure of Merit. The Air Force found no adverse past performance for SupplyCore. The agency thus did not fail to disclose a material weakness or deficiency in contravention of the FAR nor did it otherwise act irrationally in not addressing the format of plaintiff's past performance information (not addressing each Measure of Merit specifically).

## III. S&K's Past Performance Ratings

Plaintiff challenges both the overall confidence rating assigned to S&K's Past Performance proposal and six of the seven individual requirements that the Air Force found that S&K had exceeded. The Air Force considered the technical subfactor's Measures of Merit as they related to the past

---

[3](...continued)
PROS IV contract).

performance contracts and, where applicable, assessed whether the offeror met or exceeded contract requirements in these areas. The general argument that S&K was rated too high overall for Past Performance largely hinges on the particular arguments that it was overrated by the agency in the particular areas that the Air Force found intervenor to have exceeded contract requirements. We thus consider each in turn.

A. Soliciting Bids, Proposals, and Quotes from Vendors

The Air Force found that one of intervenor's subcontractors had exceeded contract requirements in the area of soliciting bids, proposals, and quotes from vendors, which relates to a Measure of Merit under the Process Performance technical subfactor. *See* AR at 319. The previous contract effort cited as exceeding requirements in this area was an Aircraft Structural Components Prime Vender Contract performed by Parts and Repair Technical Services, Inc. ("PARTS"), one of S&K's proposed subcontractors.

The Performance Quality Consensus Worksheet states that the agency point of contact ("POC") for the Aircraft parts contract informed the past performance evaluators that PARTS had exceeded "all expectations and requirement[s for] soliciting quotes from multiple vendors. The document continues with detail regarding how PARTS exceeded requirements.

Plaintiff challenges this conclusion, arguing that the Air Force failed to actually find any particular requirements of the past performance contract to have been exceeded and had instead relied only on the general positive impression given by the POC for that prior contract. Without a specific finding of what requirement in that prior contract had been exceeded, the Air Force's determination that S&K exceeded this Measure of Merit was arbitrary, says plaintiff.

As intervenor points out in its response brief, plaintiff's allegations are without merit. The record contains several emails exchanged between the past performance evaluators and the POC for the aircraft parts contract in which the Air Force twice sought clarification whether specific contract requirements had been exceeded. Although explaining how the particularities of that contract made it difficult to have exceeded specific requirements, the POC was clear that PARTS had in fact done just that in four particular areas. *See* AR at 1798 (Nov. 2015 email). The evaluation sheet cites this particular email exchange as providing the basis for the Air Force's conclusion that PARTS

had exceeded requirements.  This was plainly reasonable.

### B.  Dealing with International Customers

The Air Force found that S&K exceeded requirements for the Measure of Merit relating to communication with international customers (AR at 320) on the PROS IV incumbent contract.  AR at 1647.  The Air Force cited the 2016 Contractor Performance Assessment Report ("CPAR") in which it was reported that intervenor had implemented a process to improve information flow from contractor to foreign purchasers, "providing estimated lead times in price approval messages."  *Id.*  This, the agency found, helped foreign purchasers improve supply chain decision making.  The past performance worksheet also reported that intervenor, at customer request, had increased its customer support by providing "periodic reports on requisition status" and by coordinating "a short-notice customer visit to a vendor conducting time-sensitive repairs in support of tactical cargo aircraft."  *Id.*

Plaintiff finds fault with this evaluation, again arguing that this is insufficient to show how S&K had exceeded any particular contract requirement.  Plaintiff argues that this is instead a reflection of favoritism for an incumbent.  It also speculates that S&K may have been forced to come up with this new process because it was failing to meet requirements.

The CPAR cited in the worksheet specifically details that intervenor exceeded the PROS IV contract's timeliness requirement for responding to customer inquiries.  *See* AR at 1812.  It is also no stretch of logic to infer that the agency's recitation of S&K's innovations with regard to communication with foreign customers and its coordination of visits from customers to vendors are indications that S&K went above and beyond contract requirements to provide a level of service unanticipated by PROS IV solicitation and contract.  The record provides ample support for the Air Force's finding that intervenor exceeded requirements in this area of its past performance.

### C.  Handling of Classified and/ or HAZMAT Items

Next on SupplyCore's list of challenged ratings is the Air Force's assessment that S&K exceeded contract requirements related to two Measures of Merit, both part of the Process Performance technical subfactor and both relating to handling, packing, and shipping of classified or hazardous materials

(Measures of Merit 2 and 11, AR at 319-20). The Air Force found that intervenor had exceeded these requirements in performance of a third party logistics contract ("TPL") wherein the Saudi air force was the ultimate end user of the parts and repairs sourced by S&K under the contract. *See* AR at 1686. The past performance worksheet for this contract reflects that the "most positive aspect of [S&K's] performance [was] maintaining the ability to to control classified parts for the customer to include packing and shipping parts for the customer." AR at 1641. The CPAR for that contract recorded that such classified parts repaired under the contract were returned faster than required. S&K returned repaired parts at an average of 246 day turn around time. AR at 1687. The CPAR states that the TPL contract allowed between 80-1300 days for such service, but required a 276 day standard.

Plaintiff challenges both the application of these standards as relating to the particular Measures of Merit and whether, even if relevant, any requirement was exceeded. Plaintiff argues that these Measures of Merit relate to the contractor's compliance with security and classification regulations and have nothing to do with the speed of filling orders. Even if turnaround time is relevant, plaintiff argues that, because the TPL contract allowed between 80-1300 days for part repair and return, intervenor cannot have exceeded this requirement with a 246 day average.[4]

We cannot go so far. As intervenor explained, citing the 2014 TPL contract CPAR, the130 plus parts involved in that contract effort were all classified or involved classified testing or technical information. *See* AR at 1686. A reasonable metric for assessing contractor performance related to the special security requirements imposed by the handling of classified materials is whether the contractor was able to timely fill orders while complying with these regulator requirements. This is plainly related to the Measures of Merit cited by the Air Force in its past performance evaluation of S&K.[3]

---

[4] Plaintiff asserts, without citation, that the 279 day "standard" cited in the CPAR for return time was not a contract requirement.

[3] Also relevant, of course, would be if S&K had failed to follow some applicable regulatory rule in its handling of classified material during the TPL contract performance. Presumably the Air Force would have found that very relevant to its inquiry. We cannot say, however, that the timeliness of S&K's handling of classified materials is not relevant to the rating for handling
(continued...)

As the past performance worksheet detailed, intervenor exceeded the TPL contract's standard turnaround time. We cannot say that this was irrational nor has intervenor shown how the TPL contract's "standard" turnaround time was not a requirement that was exceeded.

D.  International Shipping and Packing

The Air Force found that intervenor exceeded contract requirements for the International Shipping and Handling Measure of Merit for two contracts, the TPL contract and the PROS IV contract. For the TPL contract, the past performance worksheet indicates that the questionaire sent to the TPL POC indicated that S&K exceeded requirements for international shipping. AR at 1641. The Air Force followed up by email, asking for specific information regarding what requirement had been exceeded. AR at 1917-19. The worksheet reflects that S&K exceeded an international shipment tracking requirement by ".6%." *Id.*; *see also id.* at 1820 (email response detailing what requirement S&K had exceeded). As to the PROS IV contract, the past performance worksheet records that intervenor exceeded the 90% accuracy requirement for estimated shipping dates by maintaining a 92% accuracy rate. AR at 1647. The CPAR for that contract reflects the same. AR at 1813.

Plaintiff challenges these assessments as not relating to specific contract requirements and therefore inapposite to the question of whether S&K exceeded any contract requirements that might relate to a Measure of Merit. Plaintiff, again, provides its own speculation that intervenor may have exceeded some requirement at some point during these contract performance periods, but argues that this falls short of showing that S&K exceeded performance for the entire contract performance.

Unsupported speculation notwithstanding, the record reveals that agency POCs for the two cited contract efforts identified contract-specific requirements that were exceeded by S&K. Our inquiry stops there. There is no indication in the record that the POCs were confused about the question presented to them, which was whether intervenor had exceeded a contract requirement relating to the international shipping. The record reflects two

---

[3](...continued)
classified material. Such an inquiry is well within the zone of reasonableness afforded to agency evaluators.

specific contract requirements that were reported as having been exceeded for the duration of those efforts.  Plaintiff provides no basis to question either of those facts.

### E.  Contract Start-Up

The Air Force also found that intervenor's efforts on the TPL contract exceeded requirements for the Contract Start-Up Measure of Merit, which relates to the second technical subfactor, Program Management.  The worksheet for the TPL contract states that S&K exceeded requirements by "providing proprietary information such as pricing and sources to the new contractor."[4] AR at 1642.  This information came to light after specific inquiry from the past performance evaluators regarding whether any specific requirements had been exceeded.  The answer was that S&K was not required to have provided the proprietary information that it did, but having done so, it sped up and made the transition to the new contract from the old more efficient.

Plaintiff challenges this, as it has with all the others findings, as not the product of any actual contract requirement to have been exceeded.  It characterizes S&K's performance in this regard as "gratuitous" but not exemplary of exceeding any requirements.  We disagree.

Although the Air Force's finding in this regard does not relate to a numeric metric expressed as a percentage or measure of time like several of the other requirements that plaintiff unsuccessfully challenges, we are in no position to second guess the government in this regard.  Plaintiff is not wrong in characterizing the provision of something not required under the subject contract as a gratuity, but that alone provides no basis to question the agency's finding that S&K having done so exceeded what was required for contract start-up under the TPL contract.  It is certainly not irrational for the agency to

---

[4] The new contractor referenced here is not the contractor performing the TPL effort but rather a Saudi company supporting the end user, the Saudi Royal Air Force.  Intervenor was the incumbent contractor on the prior TPL effort, but the company on the Saudi end was new at the time of the new TPL contract.  The American agency administering the TPL contract found intervenor's assistance to the new Saudi company to have smoothed the TPL contract start up and found that this exceeded contract requirements.

have characterized it that way.

F.  Quality Assurance

Finally, plaintiff challenges the agency's assessment that intervenor exceeded Quality Assurance standards for two prior contracts.  Quality Assurance is the fourth Measure of Merit under the Program Management technical subfactor.

The Air Force found that S&K exceeded quality assurance requirements for a Multinational Repair and Return ("MRR") contract administered by the Air Force.  The past performance worksheet states that the questionnaire returned from the MRR contract POC stated that S&K had decreased repair time and controlled repair costs despite the "increasing obsolescence" of the F-15 fighter jet while maintaining a very low defect rate of ".01 %."  AR 1633.  The questionnaire also reflected that S&K was "ISO certified" and that this exceeded a requirement.  *Id.* at 1634.  The past performance evaluators followed up, however, by asking for details regarding whether specific contract requirements had been exceeded in this regard.  The POC clarified that the MRR contract required only ISO compliance, not certification.  Thus, certification exceeded the requirement.  *See* AR at 1827 (question), 1829 (answer).  He also stated that the quality control of S&K was "always exceptional with regard to the quality of repaired items, but [was] extremely impressive during the last 3 years of the contract when there was not a single validated [failure]."  AR at 1829.

The Air Force also found that S&K's subcontractor, PARTS, exceeded contract requirements relating to quality assurance with regard to the Aircraft components prime vendor contract, another contract administered by the Air Force.  The POC for that contract reported that the contractor had to find new sources for obsolete items on multiple occasions and frequently get government approval for first article items.  *See* AR at 1635.  The past performance evaluators followed up with questions regarding the contract requirements relevant to those facts.  The POC explained that PARTS had exceeded clause H-906 of that contract by not going over the allowance for first article failure.  Although the POC did not state what the precise limit was, he stated that PARTS had experienced only one failure during the life of the contract.

Plaintiff challenges both of these findings as arbitrary because they are

not, in SupplyCore's view, sufficiently supported by the record to show actual performance requirements exceeded for the entire duration of the contract.

This disagreement with the evaluators is once again reflective of SupplyCore's view of the evaluation documents but not the agency's. Plaintiff has not, however, established with citation to the record why the agency's view is not reasonable.

As to the TPL contract, the past performance worksheet records that it required a 99% defect-free rate for facilitated repairs. The worksheet also states that S&K experienced no defects over the life of the contract. AR at 1642. This exceeds a requirement relating to the Quality Assurance Measure of Merit. Further, ISO certification is not equivalent to ISO compliance. The agency explained this difference in an affidavit provided to GAO, the essence of which is that compliance is a self-certification but that actual certification is performed by a third-party confirming that S&K met ISO standards. *See* AR at 2212-15. It is not arbitrary to say that third-party certification of meeting a standard exceeds the requirement to self-certify compliance.

Likewise, the Air Force's inquiry regarding the aircraft component prime vendor contract is sufficient support for its assessment that PARTS exceeded that contract's quality assurance requirement relating to first item testing and failure rate. The POC stated the contract clause with particularity and stated that the contractor had exceeded its requirements by only allowing one first item failure during the life of the contract. We cannot agree with plaintiff that any of this was unreasonable or unsupported by the record.

Having rejected plaintiff's challenges to the Air Force's evaluation of intervenor as having exceeded contract requirements in six areas relating to seven Measures of Merit, we find no basis on which to disturb the overall rating for Past Performance assigned to S&K. There is one remaining argument made by intervenor in this regard that we need consider, however.

G. Overall Quality Ratings

Plaintiff also argues that the Air Force was irrational in its Quality of Performance ratings for one technical subfactor for each of two contracts submitted by S&K that were rated as Exceptional. Plaintiff maintains that they should have been rated Very Good instead because intervenor only established that it exceeded "some" requirements not "many" requirements. *See* AR at

326 (Quality Assessment adjectival rating definitions).   For these two contracts, plaintiff points out that intervenor was only rated as having exceeded requirements in two areas, which, in its view, is far short of having exceeded "many" requirements.   It also points out that, for other subfactors, exceeding only two requirements merited only a Very Good rating.

The government cites the CO's Supplemental Statement of Facts submitted to GAO in which the CO explained the agency's methodology in this regard.   The CO stated that the agency "defined 'some' as one or more and many to be greater than 49% of relevant requirements." AR 2196.   A review of the past performance evaluation as a whole reveals that the 49 percent of "relevant requirements" was an assessment of how many of the Measures of Merit were related to a particular contract reference, not all of the measures. As an example, if only four measures were relevant to a particular past performance contract, and the contractor exceeded requirements for two of them, it exceeded over 49 percent of the relevant measures and was found to have exceeded "many" requirements.   *E.g.* AR at 1641-42 (assessment of the Program Management subfactor for the TPL contract).   But, when, as with the measures relevant to the Process Performance subfactor, an offeror exceeded only two of five relevant requirements, it received a Very Good rating because it exceeded one or more requirements but not over 49 percent of them.   *E.g. id.* at 1640-41 (assessment of the Process Performance subfactor for the TPL contract).   We find this methodology to be reasonable and find that the agency applied it equally to all offerors.   It thus provides no basis to upset S&K's past performance ratings.

IV.  SupplyCore's Past Performance Ratings

Plaintiff also disputes its own overall Past Performance rating and many of the ratings for particular contracts.   We need not delve into these allegations in any detail.   We have reviewed them all and find them to be disagreements with the agency's decision making but not reflective or arbitrary or capricious conduct.[5]

---

[5] We also note that, for the contracts that plaintiff cites as worthy of having been rated higher, it does not provide actual contract requirements relating to Measures of Merit relevant to those contracts that were exceeded, the very thing for which it attempted to discredit the agency's evaluation of intervenor.

V.  The Price Difference and Tradeoff Decision

Lastly, plaintiff challenges the Air Force's consideration of its low price as unreasonable in two ways.  First, it asserts that the agency unreasonably viewed the difference in price between it and intervenor as a percentage of the contract price as a whole rather than a percentage of only the contractor-controlled prices.  Second, plaintiff argues that the tradeoff decision as a whole was tainted by an irrational past performance evaluation and by an insufficient weighting of plaintiff's price advantage.

Plaintiff's citation to its difference in price expressed as a percentage of only contractor-controlled is unavailing.  Although that is not irrelevant, the agency was plainly aware of it and was not operating under any misconceptions with regard to price.  Although the vast majority of the cost of the contract was fixed by the government, the agency considered the approximately $3 million savings, which it expressed as a 0.73% of the total cost, as insufficient to outweigh the additional confidence provided by S&K's proposal.  Whether the price difference is expressed as 0.73% or 8.35%, as plaintiff urges that it should have been, the fact remains that the agency understood the difference in absolute dollars between the two proposals.  The Air Force chose the more expensive of the two because it viewed that proposal as more likely to succeed in contract performance based on the past performance evaluation.  It also specifically noted that the price difference was particularly small when considered over the life of a 15-year contract.  This was not irrational or contrary to law.

## CONCLUSION

Because plaintiff has not identified any irrationality or other illegality in the Air Force's solicitation, evaluation, or award of the PROS V contract, its protest must be denied.  We need not consider whether an injunction is merited because plaintiff has not succeeded on the merits.  Accordingly, plaintiff's motion for judgment on the administrative record is denied.  Defendant's and intervenor's cross-motions for judgment are granted.  The Clerk of Court is directed to enter judgment for defendant.  No costs.

s/Eric G. Bruggink
Eric G. Bruggink
Senior Judge

21